IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BARK**, **CASCADIA WILDLANDS**,
**OREGON WILD**, and **WILDEARTH**
**GUARDIANS**,

        Plaintiffs,

v.

**UNITED STATES FOREST SERVICE**,

        Defendant,

and

**HIGH CASCADE, INC.**,

        Intervenor-Defendant.

No. 3:18-cv-01645-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiffs Bark, Cascadia Wildlands, and Oregon Wild (collectively "Bark") have moved for an injunction [46] under Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1)(C), pending the appeal of my May 7, 2019, Order [44] granting the United States Forest Service's (USFS) and High Cascade's Motions for Summary Judgment [29, 30] and denying Plaintiffs' Motion for Summary Judgment [18]. Plaintiffs brought this action to challenge the Crystal Clear Restoration (CCR) Project, which proposes the thinning of forest

1 – OPINION AND ORDER

stands on almost 12,000 acres along the southeastern slope of the Mount Hood National Forest (MHNF). Bark seeks to enjoin "commercial logging with mechanized equipment" in 132 acres of the CCR Project that are scheduled for thinning in 2019. Mot. for Inj. [46] at 1 n.1. For the reasons stated below, Bark's Motion for Injunction Pending Appeal [46] is DENIED.

## BACKGROUND

The stated purpose of the CCR Project is to "provide forest products from specific locations . . . where there is a need to improve stand conditions, reduce the risk of high-intensity wildfires, and promote safe fire suppression activities." Administrative R. at 20770. The USFS has also stated that thinning will reduce the risk of "stand-replacing" events such as disease and insect infestation. Administrative R. at 21768. The Ahoy Stewardship Contract was awarded to Intervenor-Defendant High Cascade to implement one portion of the CCR Project. High Cascade will receive timber in exchange for executing the Project's "prescriptions," which include clearing brush and ladder fuels in addition to thinning.

Bark challenged the USFS's Decision Notice and Finding of No Significant Impact for the CCR Project by bringing claims under the National Environmental Protection Act (NEPA), 42 U.S.C. § 4321 *et seq.*, the National Forest Management Act (NFMA), 16 U.S.C. § 1600 *et seq.*, and Subpart A of the Travel Management Rule, 36 C.F.R. §§ 212.1–.21. Mot. Summ. J. [18] at 1. For the purposes of the Motion for Injunction Pending Appeal [46], I have considered only the claims on which Bark argued it is likely to succeed on appeal: (1) that NEPA required the USFS to perform an Environmental Impact Statement (EIS) because the effects of the CCR Project are highly controversial or uncertain; (2) that NEPA required the USFS to perform an EIS because the CCR Project will adversely affect the Northern Spotted Owl (NSO), a threatened species, and its habitat; (3) that the CCR Project violates the NFMA because it does

2 – OPINION AND ORDER

not comply with the Northwest Forest Plan's (NWFP) Snag Retention Standard, and (4) that the NWFP prohibits logging of the type proposed by the CCR Project in Late Successional Reserves (LSR).

## LEGAL STANDARD

Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from [a] . . . final judgment that . . . denies an injunction, the court may . . . grant an injunction on terms for bond or other terms that secure the opposing party's rights." "A party must ordinarily move first in the district court for . . . an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1)(C). "The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). The same standards govern motions for preliminary injunctions and motions for injunctions pending appeal. *See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006).

Under the four-part test for injunctive relief, a party seeking an injunction pending appeal must establish: (1) that it is likely to succeed on the merits, (2) that it will likely suffer irreparable harm in the absence of injunctive relief, (3) that the balance of equities or hardships tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor' . . . ." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). A court may not issue a preliminary injunction unless the moving party meets its burden to show all four

3 – OPINION AND ORDER

factors. *Cottrell*, 632 F.3d at 1135. "Injunctive relief is 'an extraordinary remedy,' and 'must be tailored to remedy the specific harm alleged.'" *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (quoting *Winter*, 555 U.S. at 24; *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011)). A party moving for injunctive relief must carry the burden of persuasion "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). These standards are not relaxed for plaintiffs asserting NEPA violations. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010).

## DISCUSSION

I.  Irreparable Harm

Bark argues that its members will be irreparably harmed in the absence of an injunction because the thinning sought to be enjoined will "greatly reduce [the forest's] scenic, recreational, wildlife and botanical values." Mot. for Inj. [46] at 4. Bark submitted declarations detailing its members' activities in the MHNF and the CCR Project area. The USFS and High Cascade note, however, that the declarations only establish Bark members' use and enjoyment of one unit that is scheduled for thinning in 2019—unit 8L. Resp. [57] at 13–14.

To enjoin thinning in units other than 8L, Bark must demonstrate that its members will be harmed by thinning in those units. Bark has not carried this burden by demonstrating irreparable harm in unit 8L. A declaration supporting harm in Unit 8L states that 8L is unique because it is located in a Late Successional Reserve (LSR). Krochta Decl. [51] at 4. Although the CCR Project includes one other unit in the LSR, Unit 9L, it is not scheduled for thinning in 2019 and Bark has not included Unit 9L in its motion. Resp. [57] at 4; Mot. for Inj. [46] at 1 n.1. Other than Unit 8L, Bark's declarations do not identify with any particularity the areas scheduled for thinning in 2019 where its members will be harmed. The declarations only establish that Bark's

4 – OPINION AND ORDER

members use and enjoy the MHNF or the CCR Project area. Because there is no ineluctable connection between use and enjoyment of the MHNF or the CCR Project area and the 132 acres on which Bark seeks to enjoin thinning, these declarations fail to establish irreparable harm from the thinning that will occur during the pendency of Bark's appeal.

Nonetheless, the USFS conceded at oral argument that, under Ninth Circuit precedent, Bark members' inability to "view, experience, and utilize" forestland in unit 8L in its present state is an irreparable injury. *See Cottrell*, 632 F.3d at 1135. I agree that Bark has established irreparable harm, at least with respect to the use and enjoyment of forestland in unit 8L.

To the extent that Bark claims a reduced number of snags will affect its members in a way that is distinct from use and enjoyment of the forest in its present state, I find no irreparable harm. NWFP standard FW-215 requires that new timber harvest units maintain a "sufficient quantity and quality [of snags and green reserve trees] to support over time at least 60 percent of the maximum biological potential of primary cavity nesting species." Administrative R. at 01422. The CCR Project area does not currently meet that standard and the CCR Environmental Assessment stated that "the current conditions would remain unchanged." Administrative R. at 18965. Current conditions are expected to remain unchanged because no snags are proposed to be cut and any snags that must be cut for safety reasons will remain nearby. Administrative R. at 17384. Although thinning would result in fewer snags over time, the Environmental Assessment found that thinning would "speed the ability of stands to provide the size of snags and downed wood needed to meet Forest Plan standard FW-215." Administrative R. at 18965. Because the short-term effect of the CCR Project on snags will be negligible and the Project will result in a more rapid accumulation of snags of the desired quality and quantity, the Project's effect on snags will not result in irreparable harm to Bark's members.

5 – OPINION AND ORDER

Bark also argues that the CCR Project will cause irreparable harm by reducing the chance that its members will encounter an NSO in the wild. Mot. for Inj. [46] at 7. But, as detailed in the parties' motions for summary judgment, the USFS determined that no NSOs currently occupy the CCR Project area. *See, e.g.*, Def.'s Reply [35] at 13. Furthermore, the thinning Bark seeks to enjoin in its present motion will affect only one of the eight potential NSO home ranges that the USFS identified. Resp. [57] at 15. The suitable habitat in this one potential home range will be reduced by one percent as a result of the Project. *Id.* at 16. Because there is no known NSO in the area where Bark seeks to enjoin thinning and because the Project will have a negligible effect on only one potential NSO home range, I find that Bark's members will not suffer irreparable harm in the absence of the proposed injunction.

II.     Balance of Equities and Public Interest

Because the Government is the opposing party in this case, the balance of equities factor and the public interest factor "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Although separate factors, the public interest in an injunction is coextensive the hardships borne by the parties in this case. *Compare Winter*, 555 U.S. at 26 (describing the balance of equities factor as the relative burdens or hardships to parties), *with Bernhardt v. Los Angeles County*, 339 F.3d 920, 931 (9th Cir. 2003) (describing the public interest factor as the "impact on non-parties rather than parties"). Therefore, my analysis addresses both factors simultaneously.

As discussed above, Bark has shown that its members' interests in the use and enjoyment of the forest will be irreparably harmed in the absence of an injunction, at least with respect to the use and enjoyment of unit 8L. Countering this harm, the USFS and High Cascade argue that an injunction will result in decreased forest health, an increased risk of stand-replacing and habitat-destroying wildfire, and the loss of economic benefits to the USFS and the local

6 – OPINION AND ORDER

community.  Resp. [57] at 21.  Although Bark cites *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755 (9th Cir. 2014), for the proposition that wildfire risk enters the "public interest" analysis only when the risk of wildfire is imminent, I find that case factually distinguishable.  In *League of Wilderness Defenders*, the court cited the USFS's statement that, under a no-action alternative, "[f]ire suppression can be expected to continue and be highly successful."  *Id.* at 766.  That is not the case here, where the units for which Bark seeks an injunction "are assigned a high wildfire risk rating," and have a "moderate to high risk of stand replacing wildfire."  Resp. [57] at 20–21.

The Ninth Circuit considered similar harms on a motion to enjoin logging in *The Lands Council v. McNair*, 537 F.3d. 981 (9th Cir. 2008).  In that case, the court weighed "the loss of trees and risk to the flammulated owl" against the risk of "the loss of jobs and harm to the local economy—and the risks from no action, including catastrophic fire, insect infestation, and disease."  *Id.* at 1004.  Although decided before *Winter*, the court found that the balance of hardships did not tip sharply in favor of the party seeking to enjoin logging.  *Id.*  The court acknowledged the public interest in preserving environmental resources but also recognized the public's interest in aiding the local economy, preventing job loss, and decreasing the risk of catastrophic fire.  *Id.* at 1005.  The same result follows in this case.

Although Bark argues that thinning may increase the risk of fire, my decision to deny summary judgment on Bark's claim that the effects of thinning are highly controversial or uncertain also requires me to accept the USFS's determination that thinning will reduce the risk of stand-replacing fire.  And, because I find no irreparable harm to Bark resulting from the effects of the CCR Project on the NSO, the balance of harms favors the USFS even more than in

7 – OPINION AND ORDER

*The Lands Council*, where the court considered the risk to the flammulated owl in addition to the loss of trees. Therefore, I find that the balance of hardships does not tip sharply in favor of Bark.

    III.    <u>Likelihood of Success on the Merits</u>

Due to the short interval between my decision on the merits and the present motion for an injunction, Bark was forced to argue the likelihood of success on appeal without the benefit of a written opinion. Lack of a written opinion, however, did not prohibit Bark from pressing the likelihood of success on all of its claims, rather than the four that it chose to present. Considering the merits of those four arguments, I find that Bark is not likely to succeed on appeal—as I must, after denying Bark's motion for summary judgment on the same claims. Because I have found that the balance of hardships does not tip sharply in favor of Bark, it is not necessary to consider whether it has raised serious questions going to the merits.

## CONCLUSION

Although Bark has established that it will suffer an irreparable injury in the absence of an injunction, it has failed to demonstrate that the balance of harms tips sharply in its favor. This failure it fatal to its motion for an injunction, as it follows from my decision on the parties' motions for summary judgment that I find Bark unlikely to succeed on the merits of its appeal. An injunction may issue on a lesser showing than a likelihood of success on the merits only if the balance of equities tips sharply in Bark's favor. *Shell Offshore, Inc.*, 709 F.3d at 1291. Since the balance of equities does not tip sharply in favor of Bark, the Motion for Injunction Pending Appeal [46] is DENIED.

IT IS SO ORDERED.

DATED this <u>3rd</u> day of June, 2019.

                                                    <u>/s/ Michael W. Mosman</u>
                                                    MICHAEL W. MOSMAN
                                                    Chief United States District Judge